# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
--------------------------------------------------------------------X
SHAMARE REID,                                                                    Index No.:


                                            Plaintiff,              **SUMMONS**

            -against-
                                                                   Plaintiff designates Westchester
                                                                   County as the place of trial.
WESTCHESTER COUNTY, WESTCHESTER COUNTY
DEPARTMENT OF CORRECTIONS COMMISSIONER               The basis of Venue is that
JOSEPH K. SPANO, WESTCHESTER COUNTY                  Westchester County is the
DEPARTMENT OF CORRECTIONS MEMBERS JOHN               location of the events giving rise
AND JANE DOE #1 – 15,                                to the claim and the residence of
                                                     Defendants.
                                            Defendants.

--------------------------------------------------------------------X               PLAINTIFF DEMANDS A
                                                                                     TRIAL BY JURY
TO THE ABOVE-NAMED DEFENDANTS:


            **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and
to serve a copy of your Answer on the plaintiff's attorney within 20 days after the service of this
Summons, or within 30 days after service of this Summons is complete if this Summons is not
personally delivered to you within the State of New York.

            In case of your failure to Answer this Summons, a judgment by default will be taken
against you for the relief demanded in the complaint, together with the interest, costs and/or
disbursements of this action.

Dated: Brooklyn, New York
        August 10, 2023

                                        KAISHIAN & MORTAZAVI LLC

                                        By:
                                        Maryanne K. Kaishian, Esq.
                                        55 Washington St., Suite 508
                                        Brooklyn, New York 11201
                                        E: mk@kaishianlaw.com
                                        T: (347) 662-2421

TO:
WESTCHESTER COUNTY

-and-

WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS COMMISSIONER JOSEPH K.
SPANO

-and-

WESTCHESTER COUNTY DEPARTMENT OF CORRECTIONS MEMBERS JOHN AND
JANE DOE #1 – 15

SUPREME COURT OF NEW YORK STATE
COUNTY OF WESTCHESTER

------------------------------------------------------------------X

SHAMARE REID,

Plaintiff,

-against-

WESTCHESTER COUNTY, WESTCHESTER COUNTY
DEPARTMENT OF CORRECTIONS COMMISSIONER
JOSEPH K. SPANO, WESTCHESTER COUNTY
DEPARTMENT OF CORRECTIONS MEMBERS JOHN
AND JANE DOE #1 – 15,

Defendants.

------------------------------------------------------------------X

Case No.:

**VERIFIED
COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, SHAMARE REID, by his attorney, MARYANNE K. KAISHIAN of KAISHIAN

& MORTAZAVI LLC, an attorney duly licensed to practice before the Courts of New York State,

hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.      At the time of the incidents giving rise to this Complaint, Plaintiff Shamare Reid

("Plaintiff" or "Mr. Reid") was a 21-year-old young person detained pretrial in the custody of the

Defendants Westchester County and its agents and/or employees with the Westchester County

Department of Corrections.

2.      The Defendants in this incident have caused significant injury to Mr. Reid through

a related series of assaults and other civil rights violations beginning with Mr. Reid's baseless

assault by Defendant Doe # 1 on or about May 13, 2022, and continuing through his retaliatory

1

and abusive placement in solitary confinement for approximately five (5) days, until on or about May 17, 2022.

**PARTIES**

3.      At all times mentioned herein, Plaintiff, SHAMARE REID, was a resident of Bronx County in the City and State of New York, but was detained in the town of Valhalla, Westchester County, State of New York, at the Westchester County Correctional Facility (a/k/a the Westchester County Jail).

4.      At all relevant times mentioned herein, Defendant Westchester County ("Defendant County"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the Westchester County Department of Corrections ("DOC") and their employees.

5.      Defendant Westchester County Department of Corrections Commissioner Joseph K. Spano ("Defendant Spano") was at all times relevant to this Complaint, as Commissioner and executive officer of the Westchester DOC, had final authority to appoint and/or remove any Westchester DOC employees and agents. He is sued individually and in his official capacity. Defendant Spano at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to Westchester DOC members' performance of their duties, and constituted a municipal policymaker for whom the Defendant County is liable. He is sued individually and in his official capacity.

6.      The true names and identities of the individual Westchester DOC Defendants John or Jane Doe #1-15 are currently unknown to Plaintiff. They are referred to herein collectively as

2

"DOC Defendants" or "DOC Member Does." At all times hereinafter mentioned, these DOC Defendants were employed by the County of Westchester as members of the Westchester DOC.

7.     At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the Defendant County.

8.     Each and every act and omission by the DOC Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant County.

9.     The DOC Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant County who were acting for, on behalf of, and with the power and authority vested in them by Defendant County and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

10.     All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

11.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

12.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the DOC, take any steps to intervene in,

13.     Each individual Defendant is sued in their individual and official capacities.

3

## JURISDICTION, VENUE, and GML CONDITIONS MET

14.     Venue is properly laid before this Court, as the incident(s) complained of herein took place in Westchester County, where Defendant County is located.

15.     The amount of damages sought by Plaintiff exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

16.     Plaintiff filed a Notice of Claim on Defendant County approximately six (6) days after the 90-day statute of limitations lapsed. Plaintiff has sought leave of this Court to deem the Notice of Claim timely within the one year and 90-day statute of limitations. That matter, *Shamare Reid v. Westchester County et al.*, is pending before this Court under Index No. 65048/2023. Pursuant to General Municipal Law § 50-E, Plaintiff may file a Summons and Complaint while a motion regarding timeliness is *sub judice*.

17.     For approximately eight months, and despite repeated requests for updates from Plaintiff, Defendant has failed to reschedule Plaintiff's examination pursuant to GML §50-H.

18.     Plaintiff has sought this Court's Order deeming such obligations satisfied and Defendants' right to examine him waived and incorporates by reference Plaintiff's Verified Petition and related filings under Index No. 65048/2023.

19.     Plaintiff maintains that he has complied with all GML requirements and that Defendant County's right to examination pursuant to GML 50-H has been waived.

20.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

21.     This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State Law.

## STATEMENT OF FACTS

22.     At the time of the events giving rise to this Complaint, Plaintiff Shamare Reid was a 21-year-old young person detained pretrial in Defendants' custody at the Westchester County Correctional Facility (a/k/a the Westchester County Jail).

23.     The events giving rise to this claim began on or about May 13, 2022 and continued through May 17, 2022 inside the Westchester County Jail at 10 Woods Road, Valhalla, County of Westchester, State of New York.

24.     On May 13, 2022, between approximately 10AM and 5PM, Mr. Reid exited an elevator and was returning to his unit with other incarcerated people after a permitted trip to a resource center located inside the jail. Mr. Reid was not armed, was complying with all rules and orders, and posed no threat to the safety of himself or others.

25.     Without justification or warning, Defendant Doe #1, who appeared to be a white male standing about 5'10" tall, suddenly tackled Mr. Reid to the ground from behind.

26.     Defendant Doe #1's assault forced Mr. Reid to fall forward, causing him to slam his head into an exposed heater. Defendants were on notice that the clearly visible, exposed heater and/or radiator and its sharp and/or protruding edges created a hazardous condition but failed to properly install and/or repair the device.

27.     Defendant Doe #1 forced Mr. Reid to fall face-first into the heater, and he immediately suffered a large gash to his forehead and head trauma. He began bleeding profusely.

28.     No DOC members intervened or prevented Officer Doe 1 from assaulting Mr. Reid. Mr. Reid struggled to breathe as Defendant Doe #1 pressed his face against the hard surface. Defendant Doe #1 kept his body weight on Mr. Reid's back for several minutes. Mr. Reid's eyes and face were covered by the blood flowing from the wound to his forehead. Mr. Reid could not see, had difficulty breathing, and feared for his life.

29.    DOC Defendant Does # 2-5 were present and failed to intervene and/or assist Mr. Reid in any way.

30.    After an unnecessary delay by DOC Defendants, Mr. Reid was transported to Westchester Medical Center by DOC Defendant Does # 5-7. He received stitches and was transported by Defendant Does back to the Westchester County Jail.

31.    During his transportation and time at Westchester Medical Center, Mr. Reid objected to his treatment and indicated that he wished to lodge a complaint about his treatment by the DOC Defendants.

32.    Immediately upon his return to the Westchester County Jail, DOC Defendant Does #8-10 strip-searched Mr. Reid and subjected him to a body scanner intended to detect contraband. Mr. Reid was not in possession of any contraband, and none was found.

33.    Nevertheless, Defendant Does sought to extend Mr. Reid's inability to contact outside advocates and to justify his baseless assault by accusing him of misconduct.

34.    Although all manual and technological searches of Mr. Reid established that he did not possess contraband, Defendant Does #1-12 conspired to continue his abuse.

35.    Defendant Doe # 11 stated, in sum and substance, that he "just felt like" Mr. Reid was possession of contraband, and that Defendants "just had a feeling" that he should be "monitored."

36.    Defendant Does # 12-15 escorted Mr. Reid to a cell in the Westchester County Jail and placed him in solitary confinement.

37.    Defendant Does # 12-15 hackled Mr. Reid's wrists and ankles to the bed. These Defendants applied overly tight handcuffs and restraints to his wrists and ankles, causing him pain, bruising, swelling, and lacerations, and impermissibly prohibiting his movement for multiple days.

38.    The Defendant DOC Members, individually and collectively, subjected Mr. Reid to retaliatory segregated confinement. During this time he was handcuffed by his hands and feet to a bed and forced to defecate in the presence of DOC Members and/or employees of Defendant Westchester County without any justification. Defendants denied Mr. Reid his basic rights and perpetuated and exacerbated the injuries sustained in his May 13 assault.

39.    After approximately three days of what Defendants misleadingly termed "ingestion watch," Defendant Doe #15 informed Mr. Reid that he would be placed on "medical watch," which was merely a euphemism for his continued impermissible, painful, and abusive confinement.

40.    "Ingestion watch" and "medical watch" were terms weaponized by Defendants to conceal the true nature of their conduct. Defendants did not subject Mr. Reid to impermissible segregated confinement for the purpose of providing him with medical care or for any legitimate purpose.

41.    In fact, Defendants collectively and individually denied Mr. Reid necessary medical care, including follow-up care and wound care during this period and through the remainder of his incarceration in the custody of Defendant County, exacerbating his injuries including the scarring to his face. This impermissible confinement and ongoing violations by Defendants caused Mr. Reid to experience panic attacks, difficulty breathing, anxiety, pain, suffering, and fear.

42.    Mr. Reid was physically incapacitated and unable to contact anyone outside of the jail from the time of Defendants' initial assault and through the continual violations Defendants forced him to endure over the next several days.

43.    This extended segregated solitary confinement was implemented by Defendants to harm, punish, humiliate, and retaliate against Mr. Reid, and to discourage him from complaining about his injuries and abuse by Defendants.

44.     Even after May 17, 2022, Defendant DOC Members continued to engage in retaliatory conduct against Mr. Reid and limit his ability to engage in permissible communication outside of the jail, including by locking him in his cell for extended periods and refusing his access to legal resources and avenues of recourse.

45.     Defendants' conduct has caused Mr. Reid significant physical injuries, including a visible scar on his face, a traumatic brain injury resulting in new and ongoing migraines, pain and swelling to his wrists and ankles, and emotional injuries, including anxiety, fear for his life, post-traumatic stress, and difficulty sleeping. The full extent of Mr. Reid's injuries are not yet known.

## FIRST CLAIM FOR RELIEF

### Excessive Force

***Against Defendant Does # 1-15 Pursuant to 42 U.S.C. § 1983 for Violations of Plaintiff's Rights Under the Fourteenth Amendment to the United States Constitution***

46.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

47.     Defendants' multiple uses of excessive force against Plaintiff were unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

48.     Defendants' conduct, including Defendant Doe # 1's initial assault and battery of Plaintiff, the use of overly tight restraints, the imposition of impermissible and humiliating strip searches, and the incapacitation of Plaintiff through overly tight restraints applied to all four limbs, constitutes excessive force.

49.     Defendants intentionally utilized force in a manner that was unreasonable under the circumstances, thereby causing significant injury to Plaintiff.

8

50.     As a result of Defendant's acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

## SECOND CLAIM FOR RELIEF

### Violations of Plaintiff's Due Process Rights

*Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendments to the United States Constitution*

51.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

52.     Defendants County and Spano designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in subjecting Plaintiff to the violations of his Due Process rights described elsewhere herein.

53.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty without due process of law by imposing punishment upon Plaintiff, a pretrial detainee, and by engaging in the violations complained of herein.

54.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

55.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### Municipal Liability

***Against Defendants County and Spano Pursuant to 42 U.S.C. § 1983 and <u>Monell v.</u> <u>Department of Social Services</u>, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution***

56.    Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

57.    Defendants County and Spano were responsible for implementing and enforcing policies and procedures on behalf of the Defendant County.

58.    The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to:

     a.   Subjecting detained people, such as Plaintiff, to excessive uses of force;

     b.   Creating and fostering unconstitutional conditions of confinement;

     c.   Subjecting detained people, including members of a "special population" as defined by New York State law, such as Plaintiff, to solitary confinement in violation of the New York State Human Alternatives to Long-Term (HALT) Solitary Act and the New York State Correction Law;

     d.   Denying and/or delaying necessary medical care for detained people, such as Plaintiff;

     e.   Utilizing strip searches as a means to punish and/or humiliate and/or retaliate against detained people, such as Plaintiff; and

     f.   Retaliating against detained people, such as Plaintiff, who evince an intent to lodge complaints and/or grievances against DOC members or who such members fear will lodge complaints and/or grievances against themselves or their colleagues.

59.    This conduct has been the subject of numerous lawsuits and constituted, at least in part, the basis for investigation and oversight of the Westchester County Jail by the United States Department of Justice, which terminated in 2020.

60.    All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

   a.   Formal policies, rules, and procedures of Defendant County;

   b.   Actions and decisions by Defendant County's policymaking agents including, but not limited to, Defendant Spano;

   c.   Customs, practices, and usage of the Westchester DOC that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant County, Defendant Spano, and other policymaking officials;

   d.   Defendant County's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the County's failures, and the failures of the County's policymaking agents, to train, supervise, and discipline Westchester DOC Members, despite full knowledge of the members' wrongful acts, as described herein.

## FOURTH CLAIM FOR RELIEF

### First Amendment Retaliation

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution*

61.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

62.    Defendants imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in unlawfully seizing Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations

against Plaintiff, in subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

63.     Defendants further engaged in retaliation against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, including his stated desire to complain about his abuse at the hands of Defendants and/or their colleague(s).

64.     Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

65.     Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

66.     Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

67.     Defendants' conduct did deter Plaintiff from free association and free speech, including by deterring and preventing him from reporting his abuse in a timely manner.

68.     Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of his First Amendment rights.

69.     Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

70.     Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs

and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiff.

71.    Upon information and belief, Defendants did not subject other others similarly situated to Plaintiff in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

72.    Plaintiff suffered actual chill, including in that Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on his protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

73.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiff subjected Plaintiff to the violations of their First Amendment rights described elsewhere herein.

74.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise

*Against Defendants County and Spano Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)*

75.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76.    Defendant County and policymaker Defendant Spano failed to train and supervise the Defendant DOC Members.

77.     All individual Defendants were employees and/or agents of Defendant County and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Reid's injuries.

78.     Defendants knew or should have known that Defendant DOC Members were likely to violate the constitutional rights of individuals in their custody.

79.     Defendants know that DOC Members are certain to regularly encounter detained people in their custody and control, including detained people who are deemed members of special populations under New York State law, through the course of their employment.

80.     Defendants knew that there is a history of wrongful conduct in these scenarios by DOC Members.

81.     Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries. Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

82.     By failing to train and supervise Defendant DOC Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by DOC members' conduct absent adequate training and supervision.

## SIXTH CLAIM FOR RELIEF

### Negligent Screening, Hiring, and Retention

*Against Defendants County and Spano Pursuant to 42 U.S.C. § 1983 and __Monell v. Department of Social Services__, 436 U.S. 658 (1978)*

83.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84.     All Defendants were employees and/or agents of Defendant County and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Reid's injuries.

85.     Defendant County and its policymaker officer Defendant Spano knew that the individual Defendants had a propensity for the conduct giving rise to Mr. Reid's injuries.

86.     Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

## SEVENTH CLAIM FOR RELIEF

### Breach of Duty to Protect

### *Against All Defendants Pursuant to 42 U.S.C. § 1983*

87.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

88.     The Defendant County, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

89.     Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

90.     Defendant County and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## EIGHTH CLAIM FOR RELIEF

### Conspiracy

### *Against DOC Defendants Pursuant to 42 U.S.C. § 1985(3)*

91.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

92.     Through the conduct described and complained of herein, Defendants conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

93.     Defendants acted in furtherance of this conspiracy against Plaintiff, and as a result of this conduct, Plaintiff was injured in his person and property and deprived of his constitutional and civil rights.

## NINTH CLAIM FOR RELIEF

### Failure to Prevent Civil Rights Violations

### *Against DOC Defendants Pursuant to 42 U.S.C. § 1986*

94.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     The DOC Defendants had knowledge that the wrongs conspired to be done against Plaintiff in violation of 42 U.S.C. § 1985 were to be committed and had the power to prevent and/or aid in preventing the commission of this conduct.

96.     Defendants neglected and/or refused to prevent the commission of this conduct and Plaintiff sustained harm and/or the exacerbation of harm and the deprivation of his rights as a result of this failure.

97.     Defendants are liable for all damages caused by the conspiratorial conduct they failed to prevent despite possessing the power to do so.

## TENTH CLAIM FOR RELIEF

### Violations of New York State Law

### *Pursuant to the New York State Constitution and New York State Common Law*

1. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

### *Respondeat Superior*

2. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant County, clothed with and/or invoking state power and/or authority, and, as a result, Defendant County is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

### Violations of the New York State Constitution

3. Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I §§ 5, 8, and 11 of the New York State Constitution.

4. A damages remedy here is necessary to effectuate the purposes of Article I, §§ 5, 8, and 11 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

### Humane Alternatives to Long-Term (HALT) Solitary Confinement Act and NY Corr. Law § 137

5. In March 2021, the Humane Alternatives to Long-Term (HALT) Solitary Confinement Act went into effect. Among other changes to New York State's Correctional Law § 137, the amendments under the HALT Act prohibited the imposition of segregated confinement, defined generally as greater than seventeen (17) hours of cell confinement a day, upon members of a "special population." The law defines people 21 years old and younger as members of a special population.

6.      At the time of the violations by Defendants described herein, Plaintiff was a member of a "special population" as defined under New York State Correction Law ("NY Cor. Law") § 2 because he was 21 years old.

7.      Plaintiff was detained for the entire period between his return to Westchester County Jail in either the late evening of May 13 or early morning hours of May 14 through May 17, much of the time spent restrained to a bed.

8.      This confinement was not imposed due to a facility-wide emergency nor was it for the purpose of providing Plaintiff with medical or mental health care. No exceptions to Plaintiff's protection from segregated confinement under the NY Corr. Law applied to Defendants' conduct.

9.      Defendants knowingly, willfully, and/or recklessly imposed an extended period of segregated confinement against Plaintiff.

10.     A damages remedy here is necessary to effectuate the purposes of the New York State Correction Law, including its amendments via the HALT Solitary Confinement Act.

**Violations of the New York State Civil Rights Law Article 3 § 28 (N.Y. Civ. § 28)**

11.     At the time of the incident giving rise to the instant Complaint, Plaintiff was in the custody of Defendants, who are each a "police officer, peace officer or other law enforcement representative or entity" within the meaning of the New York State Civil Rights Law. As such, Defendants had a duty to provide assistance and treatment for Plaintiff's medical needs.

12.     Defendants abdicated their duties under this statute and failed to provide medical care to Plaintiff. Such denial and/or delay was unreasonable and caused delay in Plaintiff's treatment for a serious injury.

13.     This failure resulted in serious injury and/or the exacerbation of Plaintiff's injuries for which Defendants are liable.

### Assault, Battery, and Excessive Force

14.     Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact. The force utilized by Defendants was unreasonable and intentional.

15.     Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

16.     Defendants did thereby inflict assault and battery upon the Plaintiff.

### Intentional and Negligent Infliction of Emotional Distress

17.     By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

18.     The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

19.     As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### Negligent Training, Retention, Hiring and Supervision

20.     Upon information and belief, Defendant County supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

21.     At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant County. Defendant County should have known that Defendant DOC Members had a propensity for the conduct causing Plaintiff's injuries.

22.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

19

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## CONCLUSION AND DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the County of Westchester as follows:

i.     Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.    Actual and punitive damages in an amount to be determined at trial against Westchester County;

iii.   Policy change;

iv.    Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York State Civil Rights Law, and New York common law; and

v.     Such other relief as the Court deems just and proper.

Dated:     Brooklyn, New York
           August 10, 2023

                                KAISHIAN & MORTAZAVI LLC

                                By: _____
                                Maryanne K. Kaishian
                                KAISHIAN & MORTAZAVI LLC
                                55 Washington Street, Ste. 508
                                Brooklyn, New York 11201
                                T: (347) 662-2421
                                E: mk@kaishianlaw.com

20

## ATTORNEY VERIFICATION

I, MARYANNE K. KAISHIAN, an attorney duly admitted to practice before the Courts

of the State of New York, affirm the following to be true under the penalties of perjury:

1.    I am the attorney of record for the Plaintiff.

2.    I have read the annexed Verified Complaint and know the contents thereof, and the

same are true to my knowledge, except those matters therein which are alleged upon information

and belief, and as to those matters, I believe them to be true. My beliefs, as to those matters therein

not stated upon knowledge, are based upon facts, records, and other pertinent information

contained in my files.

3.    I make this verification because Plaintiff does not reside in the County (Kings)

where I maintain my office.


Dated:  Brooklyn, New York
        August 10, 2023

By: _____
    Maryanne K. Kaishian
    **Kaishian & Mortazavi LLC**
    55 Washington Street, Ste. 508
    Brooklyn, New York 11201
    T: (347) 662-2421
    E: mk@kaishianlaw.com